*247
 
 PeaesoN, C. J.
 

 Robert Kyle died in 1857. So, the question of descent, presented by the case, depends upon the construction of the 9th rule, as set out in the Rev. Code, ch. 38, which is a modification of the 2nd section of the act of 1801, chap. 575, Laws of North Carolina, which was re-enacted by the Revised Statutes, and is the 9th rule, chap. 38.
 

 At common law, if an alien was naturalised and died, leaving a kinsman, who was also naturalized, or native born, such kinsman would inherit, if near enough to take immediately., although there was a kinsman, an alien, who would have excluded him, but for that fact; in which respect an alien differs from one attainted. This distinction is put on the ground, that the alien never was capable of taking' by descent, whereas, the person attainted was, at one time, capable. But if the citizen kinsman was not near enough to take immediately, and was forced to claim by representation, through an alien, he could not inherit; for, if the alien was living, the right of representation did not apply, and if he was dead, representation would be of no avail, as the party could only take that to which the ancestor,
 
 if
 
 living, would have been entitled. Eor instance;
 

 1. One who has been naturalised dies, leaving' his eldest son an alien, and a younger son a citizen; the younger son will inherit, because he takes immediately from his father.
 

 2. Or, leaving a grandson, a citizen, the child of a son, who was an alien; the grandson cannot inherit; for he cannot take immediately, and although his father be dead, representing him will be of no effect.
 

 3. . Or, leaving a brother, a citizen — their father being an alien; the brother will inherit, for he takes immediately from the deceased brother, and not by representing the father; as was held in
 
 Collingwood
 
 v. Pace, 1 Sid. Rep. 193; 1 Ventress, 413—in opposition to the opinion of Lord Coke. Co. Lit. 180 b. id. 8 a.
 

 4. Or, leaving a nephew, a citizen, the son of an alien brother ; the nephew cannot inherit, whether his father be dead
 
 *248
 
 or living, for he cannot take immediately, and representation would be of no avail, as his father was an alien.
 

 The Statute of 11 and 12 William 3, chap. 6, was made to cure the disabilities in the 2nd and 4th instances, put above, and the like, by “enabling natural born subjects to inherit the estates of their ancestors, either lineal or collateral, notwithstanding their father or mother, or other ancestor by, from, through, or under whom, they might make or derive their title, were, aliens.”
 

 This statute, however, did not go so far as to enable a person to deduce title as heir, from a remote ancestor, through an alien ancestor still living, 2 Kent Com. 55.
 

 The act of 1801, does not follow the Statute of William 3rd, but takes, broad and independent ground, so as to make an heir, irrespective of the canons of descent, when necessary to prevent an escheat. The preamble sets forth, “ whereas, it is contrary to the true policy of this government, that lands should escheat to the State, through failure of blood, when any relation of the ancestor exists, who, in any ease, might, or in justice, ought, to inherit the estate,” and it is enacted section 1: “ When any person shall die seized of real estate of inheritance, leaving no person who can claim as heir, but leaving a widow, the widow, in such case, shall be taken and held to be the heir of her husband, and inherit his estate as such. Thus making an heir in disregard of the principle, which requires the heir to be of the blood of the first purchaser.
 

 Section 2. “ When any person shall die seized of real estate of inheritance, leaving descendants or other relations, citizens of the United States, who would, according to law, inherit, were all other nearer descendants or relations extinct, but who, according to the now existing laws, cannot inherit, because there may be others, who, if citizens, would be entitled to inherit, but being aliens, cannot hold land in this State, whereby such land would escheat, iu such case, the nearest descendant, (this applies to the 2d instance put above,) or relation, (this applies to the 4th instance,) being a citizen of the
 
 *249
 
 United States, shall inherit.” Thus
 
 making an heir
 
 out of a kinsman, who is a citizen, in disregard of the principle of representation and rendering a reference to alien kinsmen, who are nearer in degree to the deceased ancestor, necessary for the purpose, only,,of counting the degree of relationship between the deceased ancestor and such of his citizen kinsmen as set up claim to the estate as heirs under Ihe statute; in which point of view, it is obviously immaterial whether the alien kinsmen be living or dead ; indeed, the wording of the statute seems to apply only to the case of
 
 nearer
 
 alien kinsmen who are living, and its application to the case of alien kinspien, who are dead, is left as a matter of necessary implication.
 

 The act of 1801 was, evidently not drawn by a lawyer. Its substance is, that nearer alien kinsmen, whether living or dead, shall not exclude more remote citizen kinsmen from inheriting land as heirs of a deceased ancestor; being incapable of inheriting, — they are not allowed to act “ the dog in the manger,” and thereby cause an escheat, which was considered to be against “justice” and “ the true policy of our government.” This construction is necessary in order to give any effect to the statute, for, taken literally, it only applies to relations who would inherit at common law ; whereas, the professed object is to let in citizens, who would not inherit according to the rules of the common law, although the alien relations were out of the way by reason of the rule of representation ; and the obvious intention is carried into effect by giving to the statute the force of dispensing with that rule in favor of relations, who are citizens, but who could not inherit if required to represent or make claim through, or under their alien kin, whether dead or living.
 

 In the case, under consideration, as Robert Kyle left him surviving, nephews and nieces, citizens who are children of a deceased brother and sister, both of whom were naturalised, it might have been a question, inasmuch as these nephews and nieces are capable of inheriting according to the common law, so as to prevent any danger of an escheat, does the act of
 
 *250
 
 1801, apply so as to bring in to divide the inheritance with them, the other nephews and nieces, who although citizens, are the children of two alien sisters. We think, however, the question is met by the fact, that the wording of the act is changed in the Revised Code, Rule 9, (Chapter of Descents) so as to drop the idea, that the sole purpose was to prevent escheats, and put the rule on the broad ground, that relations who are citizens, shall be entitled to the land, as heirs of the deceased ancestor, without reference to alien relations, except for the purpose of ascertaining the degrees of relationship. It will be declared to be the opinion of the Court, that the real estate, mentioned in the pleadings, should be divided into four parts, and allotted among the petitioners and defendants
 
 per stirpes,
 
 and so much of the decree in the Court below as is appealed from, is reversed.
 

 Note by the Cthief Justice:
 
 — -After writing this opinion, I met with, by accident, the case of
 
 Den on demise of Rutherford's heirs
 
 v.
 
 Wolfe,
 
 3 Hawks Rep.
 
 272.
 
 It is in point, and sustains
 
 our
 
 construction: The grand-father and the father of the lessors of the plaintiff, were both aliens, and were both, living; it was held that the lessors were the heirs of the grand-father’s bro¡. ther by force of the act of 1801. The objection, mainly relied on, was, that the act of 1808, repealed the act of 1801. This is the only point noticed in the head note, either in the index or in Iredell's digest, which may account for the fact, that the case had escaped the research of the very diligent and; learned counsel, who argupd the question before us.
 

 Pee Cuexam, Decree below reversed in part.